UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60063-CR-MARRA (COHN)

UNITED STATES OF AMERICA

v.

BRUCE MCFADDEN, SR.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT BRUCE MCFADDEN, SR.'S POST-VERDICT MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

**THIS CAUSE** is before the Court on Defendant Bruce McFadden, Sr.'s Post-Verdict Motion to Dismiss Count One of the Indictment. DE 150 ("Motion to Dismiss"). The Court has considered the Motion to Dismiss, the parties' briefing and oral argument, and the record in this case, and is otherwise advised in the premises.

**I. Background**

On June 30, 2016, officials from the City of Lauderhill, Florida received a complaint regarding the unloading and storage of fireworks at a warehouse leased by Bruce McFadden, Jr. ("Bruce, Jr."). Members of the Lauderhill police and fire departments, as well as the Florida State Fire Marshal's office, later gained entry to the warehouse. There they discovered a large stash of fireworks. Lauderhill officials then seized the fireworks for being stored in violation of city ordinances. Bruce Jr.'s father, Defendant Bruce McFadden, Sr. ("Defendant" or "Bruce, Sr."), was present at the scene and accepted a civil citation for the Lauderhill ordinance violations.

About two months later, Lauderhill officials learned that, among the fireworks seized from the warehouse, there was a small amount of 1.3G display fireworks.

Considered to be explosive materials, 1.3G fireworks are heavily regulated by federal law. Of the nearly 3,000 pounds of fireworks in the warehouse, some 64 pounds were 1.3G. The remainder consisted of 1.4G fireworks, a type available to the everyday consumer.

On March 2, 2017, the grand jury handed down a three-count indictment charging the McFaddens with explosives offenses relating to the 1.3G fireworks. See DE 3. Count One charged Bruce, Sr. with being a felon in possession of explosives, in violation of 18 U.S.C. § 842(i)(1); Count Two charged Bruce, Sr. and Bruce, Jr. with knowingly transporting and receiving explosive materials without the required license or permit, in violation of 18 U.S.C. § 842(a)(3)(A); and Count Three charged Bruce, Sr. and Bruce, Jr. with knowingly storing explosive materials in a manner not in conformity with regulations promulgated by the Attorney General, in violation of 18 U.S.C. § 842(j). Id. at 1-2.

On May 9, 2017, Defendant filed a motion to bifurcate the prior-felony-conviction element of Count One from its remaining elements. See DE 43. In lieu of revealing his prior felony adjudication to the jury, Defendant offered to stipulate to his status as a convicted felon, which would only be disclosed to the jury should it determine Defendant's guilt on the other elements. The parties argued the motion at a hearing held on September 28, 2017. There, the Government explained that, while it had no objection to entering into a stipulation, it wanted to reveal the stipulation to the jury prior to its deliberations. This, of course, would defeat the purpose of the stipulation. The Government did not enter into Defendant's proposed stipulation, since the Court

severed Count One's felon-in-possession charge from the rest of the Indictment and ordered that it be tried separately before a different jury at a later trial.

Trial on Counts Two and Three began on November 14, 2017 and lasted four days. After the Government presented its case, Bruce, Sr. and Bruce, Jr. both rested without offering any evidence or witnesses. They then moved for judgments of acquittal pursuant to Federal Rule of Criminal Procedure 29. The McFaddens asserted that, even assuming there was circumstantial evidence of possession, the Government presented no evidence of receipt. The Government responded with a greater-includes-the-lesser argument: the McFaddens' receipt and storage of the fireworks necessarily followed from the fact that the fireworks were inside the warehouse. The Court denied the McFaddens' Rule 29 motions. The case was submitted to the jury, and a verdict was returned on November 17, 2017 acquitting the McFaddens of Count Two and convicting them of Count Three.

On December 18, 2017, Defendant Bruce McFadden, Sr. filed the instant Motion to Dismiss. DE 150. He argues that permitting the Government to try him on Count One would violate principles of double jeopardy. He also contends that the Government should be judicially estopped from now stating that possession is not subsumed within receipt.

## II. Double Jeopardy Principles

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." The Clause "'protects against a second prosecution for the same offense after conviction'; as well, 'it protects against a second prosecution for the same offense after acquittal.'"

3

Bravo-Fernandez v. United States, 137 S. Ct. 352, 357 (2016) (brackets omitted) (quoting North Carolina v. Pierce, 395 U.S. 711, 717 (1969)).  These guarantees are effectuated through the doctrines of claim preclusion and issue preclusion.

"Long operative in civil litigation," the doctrine of claim preclusion (sometimes called collateral estoppel) "instructs that a final judgment on the merits forecloses successive litigation of the very same claim"—in criminal law parlance, successive prosecutions for the same charged offense.  Id. (brackets and internal quotation marks omitted).  Charges are considered multiplicative for purposes of double jeopardy if they fail the "same-elements" test.  Commonly known as the "Blockburger" test, see Blockburger v. United States, 284 U.S. 299, 304 (1932), the same-elements test "inquires whether each offense contains an element not contained in the other"; if not, then double jeopardy prohibits successive prosecution.  United States v. Dixon, 509 U.S. 688, 696 (1993).

The related doctrine of issue preclusion "ordinarily bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment."  Bravo-Fernandez, 137 S. Ct. at 358.  Applied with "realism and rationality," the issue-preclusion inquiry requires courts to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."  Ashe v. Swenson, 397 U.S. 436, 444 (1970) (internal quotation marks omitted).  This task "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings."  Id. (quoting Sealfon v. United States, 332 U.S. 575, 579 (1948)).  And it is at all times the defendant's burden

4

"to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided" by a prior jury's verdict of acquittal. Schiro v. Farley, 510 U.S. 222, 233 (1994) (internal quotation marks omitted).

## III. Discussion

In considering Defendant's Motion to Dismiss, the Court must determine whether, in light of the jury's verdicts on Counts Two and Three, the Double Jeopardy Clause's claim- and issue-preclusion components foreclose the Government from now proceeding to try Defendant on Count One. The Court must also consider whether the Government should be judicially estopped from taking a certain position contrary to one it took at trial.

### A. Claim Preclusion

Invoking Blockburger's same-elements test, Defendant contends that Count One's felon-in-possession charge is the same offense as Count Two's receipt-of-explosives charge and Count Three's storage-of-explosive-materials charge. The Government responds by asserting that the Court's severance of Count One from Counts Two and Three immunizes Count One from the double jeopardy bar. To be sure, in Jeffers v. United States, 432 U.S. 137 (1977), a four-Justice plurality opinion concluded that the Double Jeopardy Clause's prohibition on successive prosecutions for the same offense does not apply when the defendant "elects to have the two offenses tried separately and persuades the trial court to honor his election." Id. at 152; see Ohio v. Johnson, 467 U.S. 493, 502 (1984) (treating this aspect of the Jeffers plurality as the holding in that case). But whether or not Jeffers applies, Defendant's Blockburger argument fails on its own terms. Count One contains an element that Counts Two and

5

Three plainly lack, namely, proof that Defendant was previously convicted of a felony. Critically, the Eleventh Circuit has rejected an analogous Blockburger attack on 18 U.S.C. § 922(g)(1)'s prohibition of the shipment, transportation, possession, or receipt of firearms by convicted felons. See United States v. Smith, 532 F.3d 1125, 1128-29 (11th Cir. 2008); accord United States v. Walker, 545 F.3d 1081, 1085-86 (D.C. Cir. 2008); United States v. Moye, 454 F.3d 390, 397 (4th Cir. 2006); Hornbeck v. United States, 503 F.2d 1029, 1030 (8th Cir.1974) (per curiam). The Court therefore rejects Defendant's assertion that Count One charges the same offense as Counts Two and Three.

### B. Issue Preclusion

As to issue preclusion, Defendant states that, because the jury acquitted him on Count Two's charge of receiving explosive materials, the Government should be barred from proving to a subsequent jury that he possessed explosives. Pointing to the Supreme Court's grant of certiorari in Currier v. Virginia, No. 16-1348, the Government says that Defendant waived this objection. Currier presents the question whether a defendant who consents to severance of multiple charges into sequential trials waives any right to invoke the issue-preclusive effect of an acquittal in the first trial. It is unnecessary, however, for the Court to take a position on this issue, for even if Currier were to produce a holding favorable to Defendant, established precedent dictates that the jury's acquittal on Count Two should not be accorded any preclusive effect.

In United States v. Powell, 469 U.S. 57 (1984), the Supreme Court held that the issue-preclusion component of the Double Jeopardy Clause has no application when the same jury reaches irreconcilably inconsistent verdicts on the question the defendant

6

seeks to prevent a second jury from considering.  Powell's holding was founded on the Supreme Court's earlier decision in Dunn v. United States, 284 U.S. 390 (1932), that the inconsistency between a jury's guilty verdict on one count and acquittal on a related count cannot be subject to a defendant's attack.  "The most that could be said in such cases," Dunn explained, "is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt."  Id. at 393 (internal quotation marks omitted).  Powell reaffirmed Dunn's rule.  In reaching an inconsistent verdict, Powell observed, it may well have been that "the jury, convinced of guilt, properly reached its conclusion on [one count], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [related] offense."  469 U.S. at 65.  But given the historic resistance to "inquiring into a jury's thought processes," the jury's true intentions must remain shrouded in mystery.  Id. at 67.  And because issue preclusion is "predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict," the jury's acquittal lacks any preclusive effect.  Id. at 68.

Before determining whether Powell controls, the Court must ascertain whether the jury's verdicts in this case were indeed inconsistent.  How the Court is to undertake this analysis is not altogether clear, as neither the Supreme Court nor the Eleventh Circuit appear to have addressed the question.  In the Supreme Court's two issue preclusion cases involving inconsistent verdicts of conviction and acquittal, the parties assumed inconsistency.  See Bravo-Fernandez, 137 S. Ct. at 361-62 & n.5, 363; Powell, 469 U.S. at 69.  The best course of action, it seems, is to "examine the record" from trial, including "the pleadings, evidence, charge, and other relevant matter," just as

the Court would do in any issue preclusion case.  Ashe, 397 U.S. at 444; see United States v. Bravo-Fernandez, 790 F.3d 41, 53 (1st Cir. 2015) ("Because Ashe governs the defendants' underlying collateral estoppel argument, . . . we believe that Ashe's instruction to consider the record in the prior proceeding in determining what the jury necessarily decided is fully applicable to this aspect of the collateral estoppel inquiry."), aff'd, 137 S. Ct. 352.  Among the other relevant matters to consider are the parties' closing arguments and the Court's jury instructions.  United States v. Brown, 983 F.2d 201, 202 (11th Cir. 1993).

As noted, Count Two charged receipt of explosive materials, in violation of 18 U.S.C. § 842(a)(3)(A), while Court Three charged storage of explosive materials in a manner not in conformity with regulations promulgated by the Attorney General, in violation of 18 U.S.C. § 842(j).  With regard to Count Two, the Court instructed the jury as follows:

> It is a Federal Crime to transport, ship, cause to be transported, or receive any explosive materials without a license or permit.  The Defendant can be found guilty of this crime only if all of the following are proved beyond a reasonable doubt:
> First: The defendant knowingly transported, shipped, caused to be transported, or received any explosive materials, as named in the Indictment.
> Second: The defendant did not have the required license or permit. "Licensee" means any importer, manufacturer, or dealer licensed under federal law.  "Permittee" means any user of explosives for a lawful purpose, who has obtained either a user permit or a limited permit under Federal law.
> Third: The defendant knew the material was an "explosive material."  The term "explosive material" means 1.3G fireworks, but does not include 1.4G fireworks.
> Fourth: The Defendant knew of the specific characteristics or features of the 1.3G fireworks that made them an explosive material.

DE 121 at 11.

And with regard to Count Three, the Court instructed the jury, in relevant part, as follows:

> It is a Federal Crime for a person to store explosives in a manner not in conformity with the regulations promulgated by the Attorney General. The defendant can be found guilty of this crime only if <u>all</u> the following are proved beyond a reasonable doubt:
> <u>First</u>: The defendant stored any explosive materials, as named in the Indictment.
> <u>Second</u>: The defendant knew the materials were "explosive materials." The term "explosive material" means 1.3G fireworks, but does not include 1.4G fireworks.
> <u>Third</u>: The Defendant knew of the specific characteristics or features of the 1.3G fireworks that made them an explosive material.
> <u>Fourth</u>: That at least one of the items you determine to be an explosive material was stored in a manner not in conformity with regulations promulgated by the Attorney General.

<u>Id.</u> at 12.

In their Rule 29 motions and closing arguments, the McFaddens focused in on the Government's ability to prove knowledge. They also asserted insufficient evidence of noncompliant storage. And as already noted, the McFaddens challenged any inference that the presence of 1.3G fireworks in the warehouse meant that they had received the fireworks. No other elements were in dispute.

Given the substantial overlap between the elements in Counts Two and Three, it is necessary for the Court to conclude that the jury's verdicts are irreconcilably inconsistent. The McFaddens could not have received the explosive materials without possessing them. <u>Cf.</u> <u>Ball v. United States</u>, 470 U.S. 856, 862 (1985) ("[P]roof of illegal receipt of a firearm <u>necessarily</u> includes proof of illegal possession of that weapon."). Nor could the McFaddens have stored the explosive materials without possessing them. Yet the jury acquitted as to receipt but convicted as to storage.

Perhaps the jury was convinced that the McFaddens stored the 1.3G fireworks but did not receive them. See id. at 862 n.9 (noting the theoretical possibility that "a felon may possess a firearm without having 'received' it"). If that were so, then the jury found that there was possession as to Count Three but not as to Count Two. Perhaps the jury was convinced of the McFaddens' guilt but "through mistake, compromise, or lenity," Powell, 469 U.S. at 65, voted to acquit on Count Two. In the end, there is just no way to know whether the jury acted rationally in distinguishing between receipt and storage. And that, as Powell teaches, is the end of the matter. Because the jury reached irreconcilably inconsistent verdicts, the Court must hold that the issue-preclusion component of the Double Jeopardy Clause has no application in this case.

### C. Judicial Estoppel

Defendant raises an additional argument based on judicial estoppel, an equitable doctrine that "bars a party from asserting a position in a legal proceeding that is inconsistent with its position in a previous, related proceeding." United States v. Campa, 459 F.3d 1121, 1152 (11th Cir. 2006) (en banc); see New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (brackets omitted) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). "Courts consider two factors in determining whether to apply the doctrine: whether the allegedly inconsistent positions were made under oath in a prior proceeding and whether such

inconsistencies were calculated to make a mockery of the judicial system." Campa, 459 F.3d at 1152 (internal quotation marks omitted).

As noted, the Government asserted at trial that the McFaddens' possession of the 1.3G fireworks in the warehouse necessarily meant that they had received and stored the fireworks. Defendant contends that the Government should now be estopped arguing the opposite, namely, that receipt and storage do not necessarily include possession. It is well recognized, however, that "broad interests of public policy may make it important to allow a change of positions that might seem inappropriate as a matter of merely private interests." New Hampshire, 532 U.S. at 755 (internal quotation marks omitted). That is especially so "where estoppel would compromise a governmental interest in enforcing the law." Id.; see Heckler v. Community Health Services of Crawford Cty., Inc., 467 U.S. 51, 60 (1984) ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant."). Nothing in the record of this case indicates that the Government's "allegedly inconsistent positions . . . were calculated to make a mockery of the judicial system." Campa, 459 F.3d at 1152 (internal quotation marks omitted). The Court therefore finds that application of judicial estoppel would be inappropriate.

## IV. Conclusion

For the reasons stated, the Government may proceed to try Defendant on Count One of the Indictment. Doing so will not result in Defendant being "subject for the same

offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [DE 150] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 19th day of January, 2018.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF